## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WILDEARTH GUARDIANS,

    Plaintiff,

    v.

KEN SALAZAR, Secretary of the Interior,

    Defendant.

Civil Action No. 08-1596 (CKK)

### MEMORANDUM OPINION
(November 19, 2009)

Plaintiff, WildEarth Guardians, has brought suit against Defendant, Ken Salazar, Secretary of the Interior (the "Secretary"),[1] challenging the denial of two petitions submitted by Plaintiff, each of which sought increased federal protection for the Utah prairie dog. Presently before the Court is Plaintiff's [24] Motion to Supplement the Administrative Record, which is opposed by Defendant. Although the parties indicate that they have successfully resolved most of Plaintiff's concerns regarding the administrative record without the need for Court intervention, a dispute remains as to one document: the Utah Division of Wildlife Resources' 1979 petition to remove the Utah prairie dog from the list of threatened and endangered species (hereinafter, the "1979 Petition"). After thoroughly reviewing the parties' submissions, including the attachments thereto, applicable case law, statutory authority, and the record of the case as a whole, the Court shall DENY Plaintiff's [24] Motion to Supplement the Administrative Record, for the reasons set forth below.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the current Secretary of the Interior, Ken Salazar, has been automatically substituted as defendant.

# I. BACKGROUND

Although the merits of Plaintiff's challenge to the Secretary's decisions are not currently before the Court, it is helpful to understand the relevant statutory and regulatory background underlying Plaintiff's claims in this case in order to place the parties' arguments with respect to the pending Motion to Supplement in the proper context. Accordingly, the Court shall first briefly review the relevant provisions of the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 *et seq*., and its enacting regulations, before then turning to the procedural and factual background of the case at hand.

A.     *Statutory and Regulatory Background*

In 1973, Congress enacted the ESA "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species."[2] 16 U.S.C. § 1531(b). In order to receive the Act's protections, a species must be "listed" as endangered or threatened by the Secretary of the Interior.[3] The determination of whether a given species should be listed as endangered or threatened under the ESA may be made either on the initiative of the Secretary via the "candidate process" or in response to a citizen's request via the "petition

---

[2] An "endangered species" is "any species which is in danger of extinction throughout all or a significant portion of its range . . .," 16 U.S.C. § 1532(6), while a "threatened species" is any species "which is likely to become an endangered species within the foreseeable future. . .," *id.* § 1532(20).

[3] The Secretary has delegated his duties for terrestrial (*i.e.,* non-marine) species to the United States Fish and Wildlife Service ("FWS"). *See* 50 C.F.R. § 402.01(b). For convenience, the Court shall use the term "Secretary" to refer to both the Secretary of the Interior and the FWS throughout this Memorandum Opinion.

process." *See id.* §§ 1533(a)(1), 1533(b)(3).  Once a species is listed, through either the

candidate process or the petition process, the ESA provides that the Secretary "shall issue such

regulations as he deems necessary and advisable to provide for the conservation of such species."

*Id.* § 1533(d).

As is relevant to the instant case, any "interested person" may petition to have a species

listed as threatened or endangered pursuant to the petition process referenced above.  *Id.* §

1533(b)(3)(A).  Once a petition is received, the Secretary is required to determine whether the

petition presents "substantial scientific or commercial information" indicating that the petitioned

action may be warranted.  *Id.*  By regulation, the term "substantial information" is defined as

"that amount of information that would lead a reasonable person to believe that the measure

proposed in the petition may be warranted."  50 C.F.R. § 424.14(b)(1).  The ESA specifies that

the Secretary is required to make that finding — known as the "90-day finding" — within 90

days after receiving the petition, "[t]o the maximum extent practicable."  *Id.*  The 90-day finding

is published in the Federal Register.  *Id.* § 1533(b)(3)(A).  If the Secretary determines that the

listing is not warranted, the listing process for that species is terminated.  *See id.*  However, if the

Secretary determines that the petitioned action is warranted, the Act provides that the "Secretary

shall promptly commence a review of the status of the species concerned."  *Id.*  Within 12

months of the receipt of the petition, the Secretary is required to make a finding—known as the

"12-month finding"—stating whether the petitioned action is (a) warranted; (b) not warranted; or

(c) warranted but precluded by other listing activity.  *Id.* § 1533(b)(3)(B).

B.      *Procedural and Factual Background*

As discussed above, Plaintiff's lawsuit challenges two separate 90-day findings issued by

the Secretary denying petitions submitted by Plaintiff.  Only one of those negative 90-day findings, however, is currently at issue in Plaintiff's Motion to Supplement.  Specifically, Plaintiff's motion seeks supplementation of the administrative record submitted by the Secretary with respect to the negative 90-day finding issued on February 21, 2007, in which the Secretary denied Plaintiff's February 3, 2003 petition requesting the Utah prairie dog be uplisted from threatened to endangered (hereinafter, "2003 Petition").  *See* Pl.'s Mem. in Support of its Mot. to Supplement, Docket No. [23-2], hereinafter ("Pl.'s Mem."), at 3, n. 3; *see also* Am. Compl., ¶¶ 34, 38.  Accordingly, in reviewing the relevant factual and procedural background, the Court focuses exclusively on the 2003 Petition.

As set forth in Plaintiff's Amended Complaint, the Utah prairie dog was originally listed as an endangered species in 1973.  *Id.* ¶ 30.  On November 5, 1979, the Utah Division of Wildlife Resources submitted the above-referenced 1979 Petition requesting the Secretary delist the Utah prairie dog.  *Id.*  The 1979 Petition triggered a lengthy administrative review process that culminated in the Secretary's decision on May 29, 1984, to downlist the Utah prairie dog to a threatened species.  *Id.*  Plaintiff's 2003 Petition requested the Secretary return the Utah prairie dog to the endangered category.  *Id.* ¶ 34.  On February 21, 2007, the Secretary issued a negative 90-day finding denying the 2003 Petition and concluding that the petition did not provide substantial scientific or commercial information indicating that reclassification of the Utah prairie dog from threatened to endangered status might be warranted.  *Id.* ¶ 38.

Plaintiff filed the instant lawsuit on September 16, 2008, challenging, *inter alia*, the Secretary's negative 90-day finding with respect to the 2003 Petition.  *See* Compl., Docket No. [1].  Pursuant to the Court's [12] Scheduling and Procedures Order, the Secretary subsequently

4

filed the administrative record with respect to the 2003 Petition and the Secretary's February 21, 2007 negative 90-day finding (hereinafter, the "Administrative Record").  *See* Not. of Lodging of Admin. Record, Docket No. [13]; Admin. Record, Docket No. [14].  Ms. Laura Romin, Assistant Field Supervisor of the Utah Ecological Services Field Office within FWS, certified that she had compiled the documents and index that make up the relevant Administrative Record and that the documents provided therein "comprise the full and complete administrative record for the U.S. Fish and Wildlife Service's decision on the plaintiff's petition to uplist the Utah prairie dog from threatened to endangered status under the Endangered Species Act."  *See* Not. of Lodging of Admin. Record, Ex. 1 (Declaration of Laura Romin Certifying Administrative Record).

The parties subsequently met and conferred regarding Plaintiff's concerns with the Administrative Record.  *See* Pl.'s Mem. 2-3.  Although the parties were able to resolve most of Plaintiff's concerns, a dispute remains as to whether the 1979 Petition is properly considered a part of the Administrative Record.  *See id.*  Unable to resolve this issue, Plaintiff filed the now-pending [23] Motion to Supplement the Administrative Record, in which Plaintiff contends that the Administrative Record filed by the Secretary is incomplete due to the omission of the 1979 Petition.  Plaintiff therefore seeks an order requiring the Secretary to supplement the Administrative Record with that petition.  *See generally* Pl.'s Mot.; Pl.'s Reply, Docket No. [25].  The Secretary opposes Plaintiff's request, arguing that he did not consider, either directly or indirectly, the 1979 Petition in evaluating the 2003 Petition, such that the petition should not be included in the Administrative Record.  *See* Def.'s Opp'n, Docket No. [24].  As the briefing on Plaintiff's Motion to Supplement is now complete, the issue is ripe for the Court's resolution and review.

## II.  LEGAL STANDARD

Judicial review of agency action under the ESA is governed by the APA, which requires in relevant part that a court set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Cabinet Mountains Wilderness v. Peterson*, 685 F.2d 678, 685 (D.C. Cir. 1982) ("Since the ESA does not specify a standard of review, judicial review is governed by section 706 of the Administrative Procedure Act."); *see also* 5 U.S.C. § 706(2)(A).  In undertaking its review of the agency decision, the APA directs a court to "review the whole record or those parts of it cited by a party." 5. U.S.C. § 706.  This requires the Court to review "the full administrative record that was before the Secretary at the time he made his decision." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).  Courts in this Circuit have "interpreted the 'whole record' to include 'all documents and materials that the agency 'directly or indirectly considered' . . . [and nothing] more nor less.'" *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Amy Corps of Eng'rs*, 448 F. Supp. 2d 1, 4 (D.D.C. 2006) (quoting *Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188, 196 (D.D.C. 2006)).  "In other words, the administrative record should not include materials that were not considered by agency decisionmakers." *Id.* (internal quotation marks omitted).

"Supplementation of the administrative record is the exception, not the rule." *Id.* at 5 (quoting *Motor & Equip. Mfrs. Assn Inc., v. EPA*, 627 F.2d 1095, 1105 (D.C. Cir. 1979)). "Therefore, absent clear evidence to the contrary, an agency is entitled to a strong presumption of regularity, that it properly designated the administrative record." *Id.*; *see also Midcoast Fishermen's Ass'n v. Gutierrez*, 592 F. Supp. 2d 40, 43 (D.D.C. 2008) ("[The Government's]

certification of the administrative record is entitled to a strong presumption of regularity.").  For

Plaintiff to succeed with its request to supplement the record with the 1979 Petition, it must rebut

this presumption of administrative regularity and demonstrate that the 1979 Petition was before

the Secretary but was nonetheless excluded from the Administrative Record submitted to the

Court.  *See Pac. Shores*, 448 F. Supp. 2d at 6.  In so doing, Plaintiff "cannot rely on mere

speculation, but must introduce concrete evidence to 'prove that the document[] [was] before the

actual decisionmakers involved in the determination.'"  *Id.* (quoting *Sara Lee Corp. v. Am.*

*Bakers Ass'n*, 252 F.R.D. 31, 34 (D.D.C. 2008)); *see also Oceana, Inc. v. Guitterez*, Civl Act.

No. 08-318, 2009 WL 1491516, *2 (D.D.C. May 28, 2009) (same).[4]

### III. DISCUSSION

The key question now before the Court is whether Plaintiff has presented sufficiently

reasonable, non-speculative grounds rebutting the presumption of regularity and demonstrating

that the 1979 Petition was, in fact, considered (either directly or indirectly) by the Secretary.

Plaintiff contends that it has met this burden because it has shown that the Secretary "cited the

1979 Petition in the Federal Register Notice announcing his negative 90-day finding on

[Plaintiff's] 2003 Petition to uplist the Utah prairie dog."  Pl.'s Reply at 3.  According to

---

[4] Although an administrative record may be "supplemented" in one of two ways — either by (1) including evidence that should have been properly a part of the administrative record but was excluded by the agency, or (2) adding extra-judicial evidence that was not initially before the agency but the party believes should nonetheless be included in the administrative record — Plaintiff has made clear that it moves for supplementation only under the former approach.  Pl.'s Reply at 1-2.  That is, Plaintiff argues that the 1979 Petition should be included in the Administrative Record because it was considered, either directly or indirectly, by the Secretary in evaluating the 2003 Petition.  Plaintiff has specifically disavowed any argument in the alternative that — should the Court find the 1979 Petition was not, in fact, considered by the Secretary — it should nonetheless be included in the administrative record.  *See id.*

7

Plaintiff, any "[d]ocuments cited in the Federal Register within the context of a challenged

agency decision belong in the administrative record for that decision . . . because citation

necessarily implies consideration, which, in turn, implies possession." *Id.* at 6.  Therefore,

Plaintiff concludes that, because the Secretary "has the 1979 Petition in his own files [and] cited

to the 1979 Petition in his negative 90-day finding on the 2003 Petition," he "necessarily

considered the 1979 Petition when rendering the challenged decision." *Id.* at 8.

There is, however, one discrete but significant problem with this argument:  the Secretary

did not, in fact, *cite* to the 1979 Petition in his 90-day finding.  As Plaintiff concedes, the only

reference to the 1979 Petition in the 90-day finding is found in the background section of the 90-

day finding that discusses "previous federal actions."  *See* 72 FR 7843, 7845.  The relevant

language states as follows:

> On November 5, 1979, the [Utah Division of Wildlife Resources] petitioned [FWS]
> to remove the Utah prairie dog from the List of Endangered and Threatened Wildlife.
> [FWS] found that this petition contained substantial scientific and commercial
> information, and the species was reclassified from endangered to threatened on May
> 29, 1984.  (49 FR 22330).

*Id.*  Based on this quoted language, Plaintiff concludes that the Secretary cited to the 1979

Petition, thus demonstrating that he considered it in evaluating the 2003 Petition.

Upon review, however, it is clear that the Secretary cited only to the May 29, 1984 Final

Rule (*i.e.*, 49 FR 22330) — and not to the 1979 Petition.  Although the Secretary admittedly

mentioned the 1979 Petition and FWS' finding that the 1979 Petition contained substantial

information, the citation to the May 29, 1984 Final Rule indicates that the Secretary obtained this

information from the Final Rule rather than from the 1979 Petition itself.  Reference to the May

29, 1984 Final Rule confirms that this is likely the case, as it includes an almost verbatim

discussion of the 1979 Petition that is reproduced in the background section of the 90-day

finding.  *See* 49 FR 22330, 22330 ("On November 5, 1979, the Utah Division of Wildlife

Resources petitioned the U.S. Fish and Wildlife Service to remove the Utah prairie dog from the

U.S. List of Endangered and Threatened Wildlife.  The Service found that this petition contained

substantial data . . . .").  Accordingly, while the 90-day finding *mentions* the 1979 Petition, it

does not in fact *cite* to the 1979 Petition as Plaintiff contends.

This distinction is significant.  Although citation to a document may, as Plaintiff urges,

indicate consideration of the contents of the document, the fact that a document is merely

mentioned does not lead to the same conclusion.  In this case, the language quoted above

demonstrates at most only that the Secretary considered the May 29, 1984 Final Rule in

evaluating the 2003 Petition.[5]  It provides no similar suggestion that the Secretary also reviewed

the 2003 Petition itself.  As a consequence, even assuming Plaintiff is correct that all documents

cited by the Secretary in his 90-day ruling must be made a part of the administrative record, this

argument does not support Plaintiff's request to include the 1979 Petition in the Administrative

Record in this case.

Rather, the question now before the Court is whether Plaintiff has satisfied its heavy

burden to rebut the presumption of administrative regularity when it shows only that the

Secretary failed to include a document that was mentioned — but not substantively cited to — on

one occasion in the Secretary's 90-day finding.  The Court concludes that this showing is

---

[5] The Court notes that the May 29, 1984 Final Rule is included in the Administrative Record in this case.  *See* Not. of Lodging of Admin. Record, Ex. 2 (Index to Administrative Record) (identifying Exhibit 8 in the Administrative Record as the "Final Rule to Reclassify the Utah Prairie Dog as Threatened" dated 5/29/84).

insufficient.  Plaintiff has not proffered any relevant case law in support of this position, and the

Court is not persuaded that a singular reference to the 1979 Petition in the background section of

the 90-day finding is, by itself, sufficient to support supplementation of the record.  Rather, as set

forth above, Plaintiff must provide reasonable, non-speculative grounds demonstrating that the

1979 Petition itself was *considered*, either directly or indirectly, by the Secretary.  Plaintiff in this

case has not pointed the Court to any discussion of or citation to the substantive content of the

1979 Petition in the 90-day finding, nor has Plaintiff provided any other evidence to support its

position that this document was before the Secretary and considered by him in evaluating the

2003 Petition.  Accordingly, the Court finds that Plaintiff has failed to rebut the presumption of

administrative regularity that inheres to the Secretary's certification of the Administrative

Record.[6]  Plaintiff's [24] Motion to Supplement the Administrative Record is DENIED.

---

[6] The Court notes that Plaintiff, in its opening brief, initially advanced two additional
arguments in support of its position that the 1979 Petition is properly a part of the Administrative
Record; Plaintiff, however, has since made clear in its Reply that it does not rely on either
assertion for support of its Motion to Supplement, and the Court therefore does not address the
merits of these arguments.  More specifically, Plaintiff initially attempted to rely on three internal
memoranda prepared by the Department of the Interior as well as the Department of Justice to
support its request to supplement the record, *see* Pl.'s Mem., at 10-11 & n. 10, but subsequently
withdrew reliance on this argument, Pl.'s Reply at 9, n. 7 ("Because reliance on this guidance is
unnecessary for [Plaintiff] to prevail on its Motion, [Plaintiff] rests its argument solely on the
statutes and case law cited in its Motion and in this Reply.").  Plaintiff also initially asserted that
the 1979 Petition should be included in the Administrative Record because it would serve as an
useful example of a petition that received a favorable 90-day finding and could be used by
Plaintiff as a helpful comparison to the 2003 Petition.  *See* Pl.'s Mem. at 12.  The Secretary
opposed this argument, asserting that "accommodating a party's litigation strategy is not a
recognized basis for supplementing the administrative record."  Def.'s Opp'n at 10.  In response,
Plaintiff clarifies that its motion "does not rest on the fact that the 1979 Petition might be helpful
to one of [Plaintiff's] arguments in this case," and that it "disclosed its litigation strategy for the
sole purpose of demonstrating to the Court why the 1979 Petition is important enough to warrant
a motions practice."  Pl.'s Reply at 9.  The Court therefore understands Plaintiff to have
withdrawn any substantive reliance on the two above-described arguments and does not consider

## IV.  CONCLUSION

For the reasons set forth above, Plaintiff's [24] Motion to Supplement the Administrative

Record is DENIED.  The parties shall file a Joint Notice, on or before December 11, 2009,

proposing a schedule for proceeding in this matter.  An appropriate Order accompanies this

Memorandum Opinion.

Date: November 19, 2009

　　　　　　　　　　　　　　　　　 _/s/_____
　　　　　　　　　　　　　　　　　 COLLEEN KOLLAR-KOTELLY
　　　　　　　　　　　　　　　　　 United States District Judge

---

them in evaluating the merits of Plaintiff's Motion.